IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Walker D. Miller

Civil Action No. 04-cv-02595-WDM-KLM

TAMMY B. MCFADDEN,

    Plaintiff,

v.

PIONEER NATURAL RESOURCES USA, INC.,

    Defendant.

---

**AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

---

This matter is before me on the complaint of Plaintiff Tammy B. McFadden (Plaintiff or McFadden) against Defendant Pioneer Natural Resources USA, Inc. (Defendant or Pioneer) for breach of contract, promissory estoppel and violation of the Colorado Wage Claim Act. Following trial to the court and review of the record I make the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Testimony was provided by the Plaintiff and her witness, Joseph Brooker (Brooker). Pioneer's witnesses were Kevin Collins (Collins), Larry Paulsen (Paulsen), Jay Still (Still) and Hubert Henderson (Henderson).

2. Exhibits 1-9, 11-14, 16-17, 22-24, 26-27, 29-34, 38, 40-42, 44-45, 51, 53, 55, 56, and 70 were admitted.

3. All of the witness presented as credible but some of the testimony was

inconsistent or in conflict with admitted exhibits and/or the testimony of others.

4. Prior to being hired by Defendant, Plaintiff had more than 20 years employment experience as a legal secretary, paralegal, executive assistant and administrator or manager. See Exhibit 1.

5. In January 2001, Plaintiff was recruited and hired by Brooker on behalf of Shenandoah Energy, Inc. (Shenandoah), an oil and gas company.

6. Plaintiff's job responsibilities with Shenandoah included a direct reporting relationship to Brooker, an attorney with whom she had previously worked. She acted as an executive assistant and paralegal in the efforts to sell Shenandoah.

7. The terms of Plaintiff's employment with Shenandoah included an oral promise to pay her a bonus in the event the company was sold, referred to by the parties as a change-in-control bonus. The amount of the bonus or how it was to be calculated was not specifically discussed.

8. Shenandoah was sold and Plaintiff received a change-in-control bonus of $75,000 which was more than her annual salary.

9. All Shenandoah employees received a change-in-control bonus, regardless of whether they were terminated.

10. Plaintiff was not terminated by the successor owner of Shenandoah.

11. Plaintiff was recruited by Evergreen Resources, Inc. (Evergreen). She accepted the offer summarized in Exhibit 2, knowing that she would be an employee at will who could be terminated at any time. No change-in-control bonus was mentioned.

12. Her job responsibilities at Evergreen were as an executive assistant directly

responsible to Collins.

13. After being contacted by Brooker about working for his new company, Medicine Bow, Plaintiff provided him a general description of the terms of her employment with Evergreen by e-mail. Brooker responded that he felt he could give her "a reason to jump." See Exhibit 12.

14. Thereafter Brooker made an offer to Plaintiff to increase her salary from $50,000 to $56,000 and provide fringe benefits similar to what she was receiving from Evergreen with the exception of the five-year stock option and a membership in the Denver Athletic Club. In place of the stock option, he offered a change-in-control bonus payable regardless of whether Plaintiff was terminated upon the sale. The amount of the bonus would be at least one year's salary.

15. Plaintiff decided to accept the offer and tendered her resignation from Evergreen on February 2, 2004. See Exhibit 3.

16. Upon receipt of Plaintiff's resignation letter, Collins asked her what would be necessary to keep her with Evergreen. This conversation included Collins asking what Medicine Bow had offered.

17. The recollections of Plaintiff and Collins diverge somewhat concerning what Plaintiff reported the Medicine Bow offer to be. Plaintiff testified that she told Collins that Medicine Bow offered a salary increase to $65,000 together with a change-in-control bonus equal to at least one year's salary if Medicine Bow were sold, regardless of whether she was terminated.

18. Collins testified that he recalled her description of the offer of being the

opportunity to work with people she had previously for an increase of salary and that she would receive a payment if the company were sold. He recalled no description of a "bonus" or whether the payment would be made regardless of whether the Plaintiff was terminated.

19. Collins testified that he explained to Plaintiff that Evergreen was working on a change-in-control plan which would give her a change-in-control payment in the event she was terminated.

20. Collins requested that Plaintiff withhold resignation pending an offer from him, which he intended to make after discussion with human resources personnel.

21. The next day Collins offered to increase Plaintiff's salary by $10,000, grant her an additional stock option for 500 shares, and appoint her to a management position, a status that was important to Plaintiff. He also assured Plaintiff that she would be part of a company plan to provide payment upon sale of the company if she were terminated.

22. Plaintiff's testimony was essentially the same except that she recalls Collins meeting the Medicine Bow offer to pay an unconditional change-in-control bonus at lease equal to at least her yearly salary. Her contemporary e-mail to Brooker is consistent with that recollection. See Exhibit 4.

23. Plaintiff decided to remain with the Defendant upon the modified terms, increasing her salary and her stock options by 500 shares. The "compensation package" was summarized in writing and accepted by Plaintiff on February 9, 2004. See Exhibit 5.

24. Exhibit 5 makes no reference to a change-in-control bonus, which is consistent with Collins' recollection of the negotiations, contrary however to Plaintiff's recall.

25. By a February 10, 2004 e-mail to friends, Plaintiff congratulated herself on her new job circumstances at Evergreen. She emphasized her new status as "new office/facilities manager" and summarized her employment terms as "[m]ore $ and stock options and more responsibility." No mention is made of a change-in-control bonus which is inconsistent with her testimony. See Exhibits 29 and 30.

26. During this time period Evergreen was working on a company policy to be applicable in the event there was a sale or merger. According to Harrison, consideration was given to a change-in-control bonus payable regardless of whether the employee was terminated.

27. On April 30, 2004, Evergreen paid Plaintiff a $3,000 bonus and 300 additional shares of stock options which would be accelerated in the event of a change-in-control. See Exhibit 34.

28. During the same time period Evergreen engaged in merger negotiations with Pioneer which resulted in a May 3, 2004 merger agreement. See Exhibit 7.

29. The agreement included a change-in-control policy which provided for payment only upon severance. Plaintiff, like all Evergreen employees, received notice of the policy on or about May 21, 2004, specifically advising that stock options would be vested as of the merger date and that a change-in-control bonus would be paid only upon condition of termination. See Exhibit 8.

30. On or about August 23, 2004, Plaintiff was notified that, upon merger, she was to be retained with an employment package which was more favorable than her employment with Evergreen. The notice made no mention of any change-in-control payment being due. See Exhibit 38.

31. The merger was consummated on September 28, 2004.

32. From the time she accepted the terms of the February 9, 2004 compensation package (Exhibit 5) until the September 28, 2004 merger, Plaintiff did not communicate to any management person with Evergreen or Pioneer that she believed a specific term of her employment included a promise to pay an unconditional change-in-control bonus without her severance.

33. Plaintiff interviewed other companies prior to the merger date because she wasn't sure she wanted to stay with Pioneer after merger.

34. Plaintiff first demanded a payment of a change-in-control bonus in a conversation with Collins on September 30, 2004. There are discrepancies in the recollection of Collins and Plaintiff concerning the details of the conversation. It is not disputed, however, that Plaintiff asserted she had been working hard and she was entitled to the change-in-control bonus. Her own testimony was that she expected Collins to find out if Pioneer would terminate her in order for her to receive the bonus or she would hire an attorney to sue Pioneer.

35. Plaintiff spoke with others, including Henderson and Still. Still encouraged her to remain and offered salary increase. The change-in-control bonus was not resolved.

36. On or about October 11, 2004, Plaintiff accepted a written offer from a new employer (Exhibit 56) and resigned from Pioneer (Exhibit 11).

37. Plaintiff's last day of employment was October 15 and she was paid through October 22 at the higher rate of salary promised by Still.

38. On or about October 6, 2004, Plaintiff was paid for the stock options that were vested by reason of the merger. See Exhibit 51.

39. On or about October 19, 2004, Plaintiff, through counsel, made a formal demand for the change-in-control payment. See Exhibit 13.

40. Pioneer stipulates that it is responsible for any liability if Plaintiff is successful.

## CONCLUSIONS OF LAW

Based upon the above findings I conclude that Plaintiff has failed to meet her burden of proof with respect to her claims against Pioneer for the following reasons:

1. I have subject matter jurisdiction over Plaintiff's claim based upon diversity jurisdiction under 28 U.S.C. § 1332.

2. The parties waived their rights to a jury trial pursuant to Fed. R. Civ. P. 38(d) and this matter was tried to me without a jury.

3. Generally, Colorado substantive law controls this case and my goal is to reach the same result that a Colorado court would reach. Ben Kennedy & Assocs., Inc., v. St. Paul, Inc. Co., 40 F.3d 318, 319 (10th Cir. 1994).

4. Plaintiff has the burden of proof to establish her claims by a preponderance of evidence, that is that the essential elements of her claims are more probably true

than not. CJI-Civ. 4th 3:1.

    5. To recover on her claim on breach of contract Plaintiff must prove that:

    (a) Defendant entered into a contract with Plaintiff to provide an unconditional change-in-control bonus;

    (b) Defendant failed to pay the bonus upon change of control; and

    (c) Plaintiff either substantially performed her part of the contract or was excused from such performance. CJI-Civ. 4th 30:1.

    6. The element at issue in this case is whether the parties entered into a contract for Defendant to pay Plaintiff an unconditional change-in-control bonus. To prove whether there was such a contract requires proof of such an offer, acceptance of that offer and adequate consideration. CJI-Civ. 4th 30:2. In particular, both the Plaintiff and the Defendant must have understood and agreed to the essential term of the claimed entitlement to unconditional change-in-control bonus. *Id.*

    7. The essential terms of the claimed contract would otherwise be sufficiently definite and complete to allow the parties to understand their rights and duties under the contract. *Id.*

    8. There is an irreconcilable conflict between Plaintiff's claim of an agreement for an unconditional change-in-control bonus and the testimony of Collins, Paulsen and Still. Following review of all of the evidence, I conclude that Plaintiff has not met her burden of proving by a preponderance of the evidence that there was such an understanding and agreement for an unconditional change-in-control bonus. Such a claim is inconsistent with the parties' conduct, statements and writings which should be

used to determine whether the claim of contract has been proved. CJI-Civ. 4th 30:2. These inconsistencies include the following:

(a) Evergreen had no change-in-control policy at the time Plaintiff was hired;

(b) No mention is made of such a bonus in the "compensation package" Plaintiff accepted in February 2004 (Exhibit 5);

(c) Plaintiff's e-mails contemporaneous with her accepting the position of Evergreen make no reference to such a bonus (Exhibits 29 and 30).

(d) The only change-in-control policy adopted by Evergreen was contained in the May 3, 2004 merger agreement which made the bonus payable only upon termination. (Exhibit 8);

(e) Collins, Paulsen and Still testified that such an unconditional bonus was never discussed as a policy to be adopted in the merger and no disclosure was made of any alleged commitment to Plaintiff at the time of the merger;

(f) When Plaintiff was notified that she would be retained without any change-in-control payment being due on August 23, 2004, she made no claim for such a bonus. (Exhibit 38);

(g) From the time of her acceptance of employment with Evergreen, until after the merger was completed on September 28, 2004, the Plaintiff failed to notify any management person that she was entitled to an unconditional change-in-control bonus;

(h) When ultimately making her claim she demanded that Pioneer terminate her in order that she receive the bonus, a demand that is inconsistent with an unconditional change-in-control claim;

9

9. Although other facts may tend to support Plaintiff's claims, including her e-mail to Brooker (Exhibit 12) and testimony by Henderson that at one time Evergreen considered an unconditional change-in-control policy, Plaintiff has not proved that her claims are more probably true than not when considering all of the evidence.

10. With regard to her promissory estoppel claim, Plaintiff must prove by a preponderance of the evidence the following:

(a) Collins made the promise of the unconditional change-in-control bonus when he should have reasonably expected the Plaintiff forego the opportunity with Medicine Bow;

(b) Plaintiff's forbearance was induced by Collins' promise; and

(c) Circumstances are such that injustice can only be avoided by enforcement of the promise. *Nelson v. Elway*, 908 P.2nd 102, 110 (Colo. 1995).

11. For the same reasons, I conclude Plaintiff has failed to prove by a preponderance of the evidence that Collins made such a promise or that Plaintiff chose the Evergreen offer because of the alleged promise rather than, in her own words, "more $ and stock options and more responsibility." (Exhibit 29).

12. With regard to Plaintiff's Wage Claim Act and consistent with my January 16, 2007 Order on Motion for Summary Judgment, an agreement to pay such a bonus would be covered by the Colorado Wage Claim Act as "wages" or "compensation." *See* C.R.S. § 8-4-101(8)(a). However, for the same reasons, I conclude that Plaintiff has

not proved such an agreement by a preponderance of the evidence.

Accordingly it is ordered:

1. Judgment shall enter in favor of Defendant and against Plaintiff on all Plaintiff's claims for relief.

2. Defendant may have its costs.

3. Defendant's motion in limine (doc. no. 96) and motion to strike (doc. no. 132) are denied as moot.

DATED at Denver, Colorado, on December 20, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge